Dwight COLEMAN, Lester Crowsheart, Sharon Crowsheart, Russel Folmer, Anna Mae Folmer, George Hatfield, June Hatfield, Donna McCabe, Diane McCabe, on behalf of themselves and others similarly situated,

v.

John R. BLOCK, Secretary of Agriculture, Charles W. Shuman, Administrator of the Farmers Home Administration, Ralph W. Leet, State Director of the Farmers Home Administration; Harold T. Aasmundstad, Glen W. Binegar, Allen G. Drege, Dennis W. Larson, Odell O. Ottmar, and Joseph J. Schneider, as District Directors of the Farmers Home Administration of North Dakota; and Samuel Delvo, Lorace Hakanson, Larry Leier, Charles Schaefer and James Well, as County Supervisors of the Farmers Home Administration of North Dakota.

No. A1–83–47.

United States District Court,
D. North Dakota,
Southwestern Division.

May 5, 1983.

Gary Annear, Asst. U.S. Atty., Fargo, N.D., for defendants.

Sarah M. Vogel, Grand Forks, N.D., William R. King, Atlanta, Ga., Burt Neuborne, A.C.L.U., New York City, Allan Kanner, Philadelphia, Pa., for plaintiffs.

## ORDER

VAN SICKLE, District Judge.

In this litigation, plaintiffs seek to represent North Dakota farmers who now hold

or will hold farmer program loans from the Farmers Home Administration (FmHA). Plaintiffs are suing several named officials of the FmHA alleging that they have violated constitutional, statutory, and regulatory requirements. Among other things, they allege that FmHA has refused to allow the farmers' applications for deferment of loans under 7 U.S.C. § 1981a, terminated funds to farmers for necessary living and operating expenses, and subjected farmers to a biased and unconstitutional appeals process.

In the motions currently before the court, plaintiffs move for class certification and a preliminary injunction. Defendants resist these motions and in turn move for dismissal under Fed.R.Civ.P. 12 or summary judgment. This court must first consider procedural objections that defendants raise concerning exhaustion of remedies and liability to suit and then turn to the motions for class certification and preliminary injunction.

I. *Have plaintiffs exhausted their administrative remedies?*

Defendants argue that plaintiffs have failed to exhaust their administrative remedies and hence cannot appeal to this court. They point out that under 7 C.F.R. § 1900.-51 *et seq.* plaintiffs have available three tiers of administrative review of FmHA's decision to accelerate and then foreclose a loan. However, defendants fail to note that the regulations they rely on were overhauled, effective April 1, 1982, to streamline FmHA appeals. The new regulations eliminate some of the steps required by the old.

Given these new regulations, the court must determine (1) whether the defendants have failed to exhaust the remedies available and if so, (2) whether it is necessary for them to exhaust those remedies under the circumstances of this suit.

■ As to the first determination, the plaintiffs have presented facts which they say show that they exhausted the required remedies, thereby shifting the burden to the defendant to show nonexhaustion. The defendants have not met this burden: quite simply, they have failed to specify which of the named plaintiffs did not exhaust their remedies and further which remedies were not exhausted by the specified individual. Hence, the defendants have not established their contention.

■ As to the second determination, this court finds it is premature under the circumstances of this case to hold that the foreseeable plaintiffs must exhaust all administrative review, and in particular, administrative review of the FmHA decision to foreclose. If the plaintiffs are considered to be the class of persons who now have FmHA loans, the majority of which have not been foreclosed, then the requirement of exhaustion would impose an impossible burden since it is only possible to exhaust remedies once the decision to foreclose or accelerate has been made. So, the defendants' argument can only apply to those plaintiffs who hold FmHA loans which the FmHA has decided to foreclose or accelerate.

■ As to these plaintiffs, application of the doctrine of exhaustion of remedies would be pointless. The doctrine is designed to allow administrative rather than judicial resolution of disputes so that the agency may have an opportunity to correct its own errors, to afford the parties the benefits of its experience, and to compile a record that is adequate for judicial review. *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466–2467, 45 L.Ed.2d 522 (1975). Here, the plaintiffs are contending, among other things, that FmHA has not granted their statutory rights to notice of the availability of loan deferrals, an opportunity to present evidence which establishes their eligibility for a loan deferral, and a written decision specifying the reasons why such a deferral was denied. However, FmHA categorically denies that the plaintiffs have any of these rights. In fact, several courts

have already ordered the FmHA to recognize these rights, yet the agency remains firm in its refusal to do so. *See, Curry v. Block,* 541 F.Supp. 506 (S.D.Ga.1982); *Alison v. Block,* 556 F.Supp. 400 (W.D.Mo., 1982). Further, it appears doubtful that FmHA would even entertain an appeal directed to these disputed rights.[1] And finally, the thrust of this litigation does not concern a matter that the agency has a unique expertise to determine. Rather, this litigation is about the existence of several rights that the plaintiffs claim are statutory and constitutional in origin, a matter falling squarely within the expertise of the judiciary.

For the above reasons, the court finds that the plaintiffs' action is not barred by their alleged failure to exhaust administrative remedies.

**II.** *Is there jurisdiction over the individual defendants?*

■ Defendants argue that the court lacks jurisdiction over the individual defendants under the rule that public officials performing acts within their authority are not personally liable for damages resulting from those acts. *Youngstrom v. Dunn,* 447 F.2d 948, 950 (8th Cir.1971). However, the plaintiffs are not seeking to hold the individual defendants liable for damages and hence the above doctrine has no application here.

**III.** *Do the plaintiffs qualify as a class under Fed.R.Civ.P. 23?*

■ The named plaintiffs seek to represent a class of persons composed of "all persons who have obtained a farmer program loan from the Farmers Home Administration (FmHA) and who are or may be eligible to obtain a farmer program loan from the FmHA and whose loans are or will be administered through the FmHA offices located within the State of North Dakota."

To qualify this class under Rule 23, the plaintiffs must meet the requirements of both 23(a) & (b).

(i) *Requirements of 23(a)*

1. Is the described class so numerous that joinder of all members is impracticable?

Since the class is stated to be all persons who currently have or will acquire FmHA farmer program loans within North Dakota, a class that may encompass thousands, many of whom cannot be currently identified, this class is too numerous to make joinder practicable.

Apparently, defendants believe that this class is overbroad in that the plaintiffs' claims could be brought by a more narrowly defined class. Defendants premise their arguments on the assumption that the appropriate class is those persons who have or will acquire FmHA farmer program loans and *who are or will be subject to FmHA foreclosure.* Once the class is so restricted the defendants claim that it is practicable to join all plaintiffs as they allege there were only 14 judicial foreclosures by FmHA since August 4, 1978.

However, a class so restricted would be improper because the newly defined class would not adequately cover the relief which the plaintiffs are seeking. The relief sought is not just for improper foreclosure procedures, but is also for a broad range of actions taken by the FmHA, including liquidation, allowance of operating and living expenses, foreclosure, and acceleration.

Further, defendants' arguments that the class is not sufficiently definite are not persuasive since the class can be definitely identified by a clear characteristic—the holding of a farmer program loan from FmHA. The fact that future holders cannot be now identified does not undercut the fact that a clear criterion exists to identify them when they do indeed obtain a loan.

---

1. Regulation 7 C.F.R. 1900.53(a) states: "FmHA decisions based on statutory requirements or on objective standards that are not

included in published regulations may not be appealed."

As a final parry to plaintiffs' definition of the class, the defendants maintain that many of the plaintiffs in the prospective class would lack standing to sue because they would not suffer the same injuries. Apparently, defendants claim that the plaintiffs would suffer diverse injuries since the circumstances of each foreclosure are different. This argument misses the point of the plaintiffs' suit for injunctive relief. The injury claimed is that the plaintiff class is not given (1) notice of the availability of a loan deferral if a farmer is unable to make payments due to circumstances beyond his control, (2) an opportunity to present evidence proving such circumstances, (3) a written decision specifying why deferral was not granted, and (4) an opportunity to prove eligibility for operating or living allowances. These are injuries that are common to the plaintiff class since it is FmHA policy not to accord any of these benefits.

For the above reasons, the court finds that the plaintiff class meets the requirements of Rule 23(a)(1).

2. Are there questions of law or fact common to the class?

As just pointed out, the plaintiffs claim that as FmHA borrowers they have statutory and constitutional rights to notice of the deferral option, an opportunity to present evidence for deferral, a written decision specifying why deferral was not given, and an opportunity to prove eligibility for living or operating allowances. Whether or not the plaintiffs have these rights is a common issue of law. It is also a common issue of fact that the FmHA has denied the existence of these rights prior to this lawsuit and during the pendency of this suit.

Defendants contend that this is not a common issue of law since the rights in question must be determined in the context of individual cases. This court, however, fails to see why that is so. The rights that the plaintiffs claim hinge on questions of statutory and constitutional interpretation. Defendants fail to point out a single factual peculiarity of one of the plaintiffs that would alter this court's decision as to the existence of these rights or FmHA's failure to recognize these rights. This is not, for example, a case where the plaintiffs all suffer different injuries or degree of injury and hence individual adjudications are required. Rather the plaintiffs here are specifically contesting the existence of the claimed rights. The purpose of a class action is primarily for judicial economy and it would be a gross waste of judicial resources to evaluate the case of each prospective plaintiff separately when they all involve common or overlapping legal issues.

3. Are the claims or defenses of the class typical of the members of the class?

The typicality requirement obligates the class representative to show that there are other members of the class who have similar grievances. *Wright v. Stone Container Corp.*, 524 F.2d 1058, 1062 (8th Cir.1975). Plaintiffs claim that the FmHA's refusal to act without adequate procedures in foreclosure, acceleration, or other adverse action is a grievance common to the plaintiff class. Defendants again deny this grievance is common although they do not produce a reason to support this denial. Rather they speak of particularized determinations without saying why the particular facts show that the plaintiff class does not suffer denial of at least some of the claimed rights. Moreover, the defendants have not presented any facts which show that the FmHA has on occasion recognized the disputed rights, so the defendants' argument based on *Burchette v. Dumpson*, 387 F.Supp. 812, 820 (E.D.N.Y.1974) is inapplicable.

4. Will the representative parties fairly and adequately protect the interests of the class?

Defendants freely concede that plaintiffs' counsel will fairly and adequately protect the interests of the class. However, defendants contend that because the interests of the named plaintiffs differ so widely from each other and the unnamed plain-

tiffs, the named plaintiffs will not adequately represent the class. Once again defendants fail to show why the named plaintiffs have such divergent interests.[2] Further, even if differences exist in the interests of the named plaintiffs, such differences would not be likely to jeopardize the adequacy of representation because this litigation is directed at legal rights that would redound to the interests of all of the plaintiff class. In fact, the briefs filed in this matter indicate that plaintiffs' counsel is acting vigorously to establish all of the sought rights.

 Finally, defendants argue that plaintiffs are not proper representatives since they have not shown they have the financial resources to pay for notice to the unnamed plaintiffs. However, full notice to absent parties is only required if plaintiffs' action is certified as an action under Rule 23(b)(3). *Bolton v. Murray Envelope Corp.*, 553 F.2d 881, 883 (5th Cir.1977). Since plaintiffs are asking for certification under Rule 23(b)(1) or (2), this financial showing is not required.

(ii) *Requirements of 23(b)*

An action that meets the prerequisites of Rule 23(a) may be maintained as a class action if it meets any one of the three conditions listed in Rule 23(b). Plaintiffs contend that this action meets the condition of Rule 23(b)(2) which provides for class certification if:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .

Here the FmHA has refused to act on grounds generally applicable to the class by refusing to recognize the rights to notice of a loan moratorium, an opportunity to present evidence regarding the moratorium, a written decision specifying the reasons for denying the moratorium, and an opportunity to present evidence to obtain living and operating allowances. The plaintiffs request declaratory and injunctive relief to enforce these rights.

The defendants argue, however, that a class action under Rule 23(b)(2) would not serve a useful purpose because the rulings of this court will establish precedent that will bind other courts ruling on the same issue. Defendants argue that there is no need to rule on a class basis because each potential plaintiff would have the benefit of the precedent established.

This argument overlooks several points. First, FmHA will not change its state-wide policies if this action is limited to the named plaintiffs as demonstrated by its conduct in other states. If FmHA does not do so, then many who hold FmHA loans may be denied the benefit of notice and opportunity for hearings without knowing that they have these claimed rights. Second, if a loan holder is aware of these claimed rights and seeks to enforce them, he must then go to the considerable expense and effort to bring a legal action to compel FmHA to grant these rights. Third, other courts may not accept this court's decision as binding precedent. This court is not an appellate court and its precedents are not fully binding on other trial courts. Thus, the door is left ajar for inconsistent adjudications. These considerations point up the need to use a class action to expand the precedential force of the court's decision, a need the

---

**2.** Perhaps defendants are referring to the contention they make in another part of their brief that defendants Crows Heart and Folmer cannot adequately represent the class since they are defending against allegations that they converted the collateral for their FmHA loans. Yet it is not clear why this defense would result in inadequate representation. For one thing, the equitable relief that the entire class is seeking does not concern the separate defense that these two plaintiffs raise. For another, the alleged difference in interest has not in any way surfaced in the quality or zeal of representation that plaintiffs have made in this court. If the plaintiffs had to demonstrate the same interest among all members of the class, obviously no class action would ever be possible.

Supreme Court recognized in *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 266, 92 S.Ct. 885, 893, 31 L.Ed.2d 184 (1972).

For the above reasons, this court finds that the plaintiffs meet the requirements of Rule 23 for qualification as a class. The certified class shall consist of all persons who have obtained a farmer program loan from the Farmers Home Administration and who are or may be eligible to obtain a farmer program loan from the FmHA and whose loans are or will be administered through the FmHA offices within the State of North Dakota.

IV. *Are the plaintiffs entitled to a preliminary injunction?*

Plaintiffs move this court for a two-part injunction, asking first that the defendants be enjoined from taking any adverse action against those holding FmHA farm program loans until the FmHA promulgates regulations which implement 7 U.S.C. § 1981a. Second plaintiffs ask that the defendants be enjoined from taking any loan servicing action which deprives the plaintiffs of property needed for farm operation or living expenses until the FmHA promulgates regulations giving the plaintiffs notice of the action and the reasons for it, and an opportunity to present additional facts before an impartial hearing examiner.

In determining whether to grant the requested injunctive relief the court must weigh the following four factors:

(1) the threat of irreparable harm to the movant;

(2) the balance between this harm and the harm that would result to the defendants from granting the injunction;

(3) the probability that the movant will succeed on the merits; and

(4) the public interest.

*Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981).

In the balance, no single factor is determinative. Rather, the court must determine whether the overall weight of these factors supports or opposes granting the sought injunctive relief. *Dataphase,* 640 F.2d at 113.

■ (1) Would the plaintiffs suffer irreparable harm if the sought injunction were not granted?

The plaintiffs claim that they would suffer irreparable harm in that "plaintiffs will lose their land and farm equipment, will be unable to continue their family farm operations, and will be forced to move from their farms." Defendants contend this does not constitute irreparable harm because the plaintiffs still have an adequate remedy at law to protect their rights. Namely, plaintiffs may assert these rights when the FmHA brings a foreclosure action against them.

This argument again rests on the defendants' erroneous assumption that the plaintiffs' suit is concerned only with foreclosure. The rights that plaintiffs are seeking would apply not just to foreclosure but to other adverse actions that the FmHA may take against the plaintiffs, such as voluntary liquidation or loan servicing without allowance for living and operating expenses or notice of availability of payment deferral. Further, many farmers would not be aware of the available options and hence not exercise their rights at the foreclosure.

The defendants also argue that the injury that the plaintiffs would suffer is not itself irreparable because it is inevitable that they will lose their farms and livelihood even if the rights are granted. A district court denied injunctive relief on precisely this ground in *Tuepker v. FmHA,* 525 F.Supp. 237, 239 (W.D.Mo.1981).

Apparently, the plaintiffs believe that this case is different from *Tuepker* because here it is not inevitable that the farmers will lose their land, etc., even if the injunction is granted.[3] However, they fail to show why their chances of saving their

---

**3.** Plaintiffs also attempt to circumvent the defendants' objection by describing their injury in

another form, that is, as a violation of their

land, etc. are any better if the rights are upheld. Clearly, under 7 U.S.C. § 1981a the Secretary of Agriculture has wide discretion to deny requests for deferral. While some denials might constitute an abuse of discretion, one would assume that very few of the denials would fall into this category. Again, as to the denial of operating and living allowances one would assume that few if any of these denials would constitute an abuse of discretion.

Although this court is not impressed by the plaintiffs' argument, the defendants' position requires closer analysis. The defendants state that, in most cases, the plaintiffs will not avoid foreclosure or obtain denied allowances even if the injunction is granted. Hence, granting this injunction would serve no real purpose. Yet this argument is not addressed to irreparable injury. If foreclosure would now constitute irreparable injury by displacing farmers, the fact that foreclosure is possible sometime in the future does not make that injury any less irreparable. If someone suffering from inoperable cancer could delay his demise by taking a treatment, on defendants' logic it would follow that his demise was not irreparable. The absurdity of this is patent.

Defendants' argument, thus, is addressed to the ultimate effect of the injunction but not to the concept of irreparable injury. Defendant is asking the court to impose a new standard, that the injury be irreparable *and* that it not be one which would inevitably occur anyway. This court declines to adopt this new standard.

(2) Would the harm to plaintiffs from not granting the injunction outweigh the harm to the defendants from granting the injunction?

Assuming the harm to plaintiffs is the loss of their farms and necessary living and operating expenses, we must then weigh this harm against the costs to FmHA which would result from the injunction. FmHA would arguably suffer loss of interest on funds and some loss in the value of the security due to delays that would result from the additional procedures that they must follow. Also, implementing the procedures here in North Dakota would involve some cost. But, this court has not been presented with any figures that estimate this cost. Thus, the court's estimation of relative costs can at best be highly speculative and hence shall not weigh heavily in its decision.

(3) Is it probable that the plaintiffs will succeed on the merits?

In this case, plaintiffs claim rights grounded in the constitution, statutes, and regulations. Since the two parts of plaintiffs' proposed injunction rest on different legal bases the court will consider each separately.

(i) *Part 1 of the injunction*

Plaintiffs assert that 7 U.S.C. § 1981a explicitly or implicitly grants the following rights which the FmHA has refused to recognize: the right to notice that loan deferrals may be obtained; the right to a hearing to present evidence for such a deferral; the right to a written decision specifying why deferral was denied; the right to be provided more specific standards for establishing deferral eligibility; and the right to appeal within the FmHA a denial of deferral. To carry out these rights, the plaintiffs argue that the Secretary of Agriculture must promulgate regulations.

Title 7 U.S.C., section 1981a provides:

In addition to any other authority that the Secretary *may* have to defer principal and interest and forego foreclosure, the

___

constitutional rights. *See, Henry v. Greenville Airport Commission,* 284 F.2d 631, 633 (4th Cir.1960); *Planned Parenthood v. Citizens for Com. Action,* 558 F.2d 861, 867 (8th Cir.1977). Here the injury is not that the farmers will go under but that their constitutionally protected rights are not recognized in the present FmHA

loan servicing procedures. The success of this argument, obviously, hinges on the plaintiffs' success in showing that they have these constitutional rights. The court discusses the validity of these claimed constitutional rights *infra,* pages 1363–1366.

Secretary *may* permit, at the request of borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this chapter, or under the provisions of any other law administered by the Farmers Home Administration, and forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower. The Secretary *may* permit interest that accrues during the deferral period on any loan deferred under this section to bear no interest during or after such period: Provided, That if the security instrument securing such loan is foreclosed such interest as is included in the purchase price at the foreclosure shall become part of the principal and draw interest from the date of foreclosure at the rate prescribed.[4] (Emphasis added)

None of the rights the plaintiffs claim are explicitly granted in the statute. But are they implied by the statute? Both plaintiffs and defendants present several cases where courts have engaged in elaborate analysis of the Congress' intent in drafting this statute to justify contrary conclusions.[5] This court however believes this matter can be resolved more directly.

First, as to the question of notice to the borrower, the statute explicitly states "the Secretary may permit, at the request of the borrower." That language clearly contemplates that the borrower know about the possibility of obtaining a loan deferral. The question is whether it is the borrower's responsibility to find out about the deferral or the Secretary's to tell him. The consequences of placing this responsibility on the farmer would be clearly unfair. The lucky farmer whom the county agent told about the loan deferral could make a request but the other farmers not so lucky would be left in the dark. We cannot expect the ordinary farmer to spend his extra hours in a federal depository, probably at least one 100 miles away from his farm, reading the United States Code and the Federal Register. This court must assume that the Congress acted with a basic sense of fairness and would not want the opportunity to request a loan deferral to rest on such happenstance. Although the Secretary's authority to deny a loan deferral is discretionary, this still does not take away from the presumption that the Congress acts consistently with the notions of basic fairness.

As to the opportunity to present evidence for a loan deferral, this court finds the matter no less evident. The statute clearly requires the Secretary to consider the borrower's request. Yet basic standards of fairness require that this consideration be based on accurate information. The Secretary's decision to grant or deny a loan deferral must be an informed decision. In order to obtain accurate evidence for this decision it is imperative that the farmer's side be heard since he is the one who is most intimately acquainted with the reasons why his operation has fallen on hard times. Again, although the Secretary has wide discretion to grant or deny a loan deferral, this discretion must be exercised in an intelligent and informed manner.

The court finds that this opportunity to present evidence must occur prior to the FmHA's decision to terminate the borrower's allowance for necessary living and op-

---

4. This statute is not a shining example of legislative art. In fact, it is remarkably like the "exhoratory generalities" that Judge Kaufman decries. But when the Congress assembled speaks with all the pomp and ceremony of a statutory enactment, I must presume its language mandates something.

5. *See, e.g., Curry v. Block,* 541 F.Supp. 506 (S.D.Ga.1982); *Neighbors v. Block,* 564 F.Supp. 1075 (E.D.Ark., 1982).

erating expenses. The necessity for a pre-termination hearing is manifest, for once a farmer's income is cut the farmer is permanently put out of business and, by virtue of the very termination, ineligible for a loan deferral. If the farmer is to have a meaningful chance to prove eligibility for deferral, it must be prior to the termination.

As to the necessity of a written decision specifying in some detail why the loan deferral was not granted, this court finds that such a decision is required both to insure that the Secretary gives full consideration to the borrower's request and to give the borrower a basis on which to review the decision.

As to the matter of more specific standards for loan deferral, this court finds that at least some further specification of existing standards is necessary to give the applicant notice of the factors he must show. The statute at present requires the applicant for loan deferral to meet three conditions: (1) that he cannot make the required payments without unduly impairing his standard of living; (2) that he cannot make the payments due to reasons beyond his control; and (3) that his inability to make payment is temporary. But from the statute the applicant gets no idea of how living standards are determined, how severe an impairment is required, what constitutes a reason beyond one's control, how severe it must be, and how long a temporary inability to pay can last. Even with more specific standards, however, the Secretary's factual determinations regarding a farmer's eligibility under such standards will be given great deference. 5 U.S.C. § 706.

As to the necessity for an agency appeal of a moratorium denial, this court does not find such a procedure necessary for implementation of § 1981a.[6] This court believes that the safeguards of an opportunity to present evidence, a written decision specifying the reasons for denial, and the deline-

ation of specific standards adequately insure that the applicant's request is given fair consideration. In the last resort, the applicant can appeal to the district court to challenge an abuse of discretion. Further, the fact that none of regulations promulgated pursuant to either of the other two existing deferral statutes, 7 U.S.C. § 1981(d) and 42 U.S.C. § 1475, provide for appeal of a denial of deferral supplies additional support for this court's denial of that right under 7 U.S.C. § 1981a.

The next question is whether the FmHA must promulgate regulations which establish the above rights. This court does not find that such regulations are required, although as a practical matter they may improve agency efficiency. The plaintiffs argue that because such regulations were issued pursuant to a similar loan deferral statute, 42 U.S.C. § 1475, the Congress would expect that such regulations would be promulgated under 7 U.S.C. § 1981a. This argument overlooks the fact that § 1475 explicitly states that "the Secretary is authorized under regulations to be prescribed by him to grant a moratorium" but § 1981a makes no mention of regulations. Further, in reality it is no more likely that the Congress was aware of the regulations under § 1475 and would expect similar regulations to be promulgated under § 1981a than it is that farmers are aware of the benefits of § 1981a.

Nor does this court believe that such regulations are necessary for FmHA to carry out its statutory duty of informing borrowers of the availability of loan deferrals, the opportunity to present evidence to establish eligibility, etc. Whatever means the agency chooses to carry out this task is its own business so long as it does so adequately.

Finally, a practical consideration motivates this court not to require regulations. By requiring the FmHA to promulgate national regulations, this court would in effect

---

6. Apparently, 7 C.F.R. 1900.53 would bar an appeal of a moratorium denial. See note 1 supra.

bar all foreclosures until the appeal of this order is decided. But by requiring only that FmHA observe these rights rather than issue regulations, the court allows the agency to carry on with foreclosures so long as the above rights are observed.

Having examined the merits of the relief sought in the first part of the injunction, the court now turns to the second part.

(ii) *Part 2 of the injunction*

In part two of the proposed injunction, plaintiffs ask this court to secure for them the following rights: the right to notice that the FmHA will terminate allowances for farm operation and family living prior to the termination; the right to be advised of the facts that form the basis for this termination prior to its occurrence; the right to have an opportunity to present additional facts or comments prior to termination; and the right to have a hearing before an impartial examiner prior to the termination. Again, plaintiffs assert that FmHA is legally bound to promulgate regulations establishing these rights.

Before discussing these rights individually, it is necessary to explain the context in which the termination of living and operating expenses occurs. In ordinary circumstances, the FmHA releases its lien on the proceeds of a borrower's crops and livestock in order to permit the borrower to make payments in accordance with the Farm and Home Plan he has worked out with the FmHA. Under this plan allowances are set for farm operating and family living expenses, and for years where the income received falls below expected income, priority is given to paying the necessary farm and home expenses planned for payment by cash as incurred. *See,* 7 C.F.R. 1962.-17(c)(1).

However, when the county supervisor believes that the borrower is in "default," as that term is specially defined in 7 C.F.R. 1962.4(g), he makes the decision to "liquidate" the loan. *See,* 7 C.F.R. 1962.40 (chattel loans); 7 C.F.R. 1827.17 (real estate

loans). In making this decision the county supervisor must get the advice or recommendation of the District Director or County Committee for loans secured by chattel and the State Director for loans secured by realty. 7 C.F.R. 1872.17; 7 C.F.R. 1962.-40(a). Pursuant to this decision, the FmHA refuses to release its lien on the proceeds of the borrower's crops or livestock. This in effect cuts off the borrower's income stream, unless the borrower has another source of income.

Once the decision to liquidate the loan is made, many borrowers voluntarily sell off their property to pay the FmHA debt. If the borrower does not do so, sixty days after the decision to liquidate, the FmHA gives the borrower notice that the loan is being accelerated, so that the balance owing is due immediately. 7 C.F.R. 1872.17(b). At this time, the borrower is notified that he has 30 days to request an appeal of the county supervisor's decision to accelerate the loans. 7 C.F.R. 1900.56(a)(3). The hearing then may be scheduled within 45 days of the request, 7 C.F.R. 1900.56(c)(3), and the hearing officer will generally render a decision within 30 days of the hearing, 7 C.F.R. 1900.57(g).

In appeals from decisions to accelerate loans secured by chattel, the hearing officer is the District Director. In appeals from decisions to accelerate loans secured by real estate, the hearing officer is the District Director from another district or a person not involved in the initial decision as designated by the State Director. 7 C.F.R. 1900, Subpart B, Exhibit D.

With this background the court now turns to evaluate the plaintiffs' arguments for positing a right to have a hearing prior to the termination of allowances for farm operation and family living. This right is the key right which plaintiffs seek to establish and the other rights they claim in part 2 of the injunction for the most part follow from it.

Plaintiffs advance two arguments for this right. First, they claim that termination of

this allowance, i.e., the refusal to release the lien on crops and livestock, without a prior hearing constitutes deprivation of their property without adequate due process. They claim that the farmer-borrower is precisely in the situation of the wage earner in *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) whose wages were seized prior to any judicial hearing. In *Sniadach,* the Supreme Court ruled that a debtor's wages may not be garnished without notice and an opportunity for a prior hearing. 395 U.S. 342, 89 S.Ct. 1823. Similarly, in *Fuentes v. Shevin,* 407 U.S. 67, 80–93, 92 S.Ct. 1983, 1994–2000, 32 L.Ed.2d 556 (1972), the Supreme Court found Florida and Pennsylvania replevin statutes in violation of due process because those statutes allowed for the seizure of chattel property without a prior opportunity to be heard.

Plaintiffs' first argument must be rejected because it overlooks a fundamental distinction between the factual situations in *Sniadach* and *Fuentes* and the case here. In neither of those cases did the issue arise whether a *secured* creditor could repossess his chattel by self-help as is the case here. It is well-established in creditor's law that a secured creditor may upon the debtor's default take possession of the collateral without prior judicial action if this may be done without breach of the peace. See, N.D.C.C. § 41–09–49, U.C.C. § 9–503. In refusing to release its lien on the borrower's crops and livestock, the FmHA is essentially using self-help to take possession of its collateral.

The plaintiffs' second argument is that the FmHA's status as a governmental agency imposes on it requirements not imposed on the private lender. They contend that the FmHA is acting at least in part as a welfare agency and consequently, participation in the farmers loan program is a governmental benefit in which the plaintiffs have a legitimate property interest.

This court agrees that participation in FmHA programs is in large part a form of social welfare. Although these programs use the language and techniques of commercial lenders, they are subjected to restrictions that make them substantially different from commercial loans. It is undisputed that one of the overriding purposes of the FmHA is to extend credit to the family farmer who cannot obtain credit from another source. In fact, the unavailability of credit elsewhere is a major prerequisite for obtaining a loan. *See,* 1961 U.S.Code Cong. & Ad.News 2243, 2305; 1978 U.S.Code Cong. & Ad.News 1106, 1127; *Curry v. Block,* 541 F.Supp. 506, 510–11. Further, unlike the private lender, FmHA exercises wide authority to compromise or adjust loans. *See, e.g.,* 7 U.S.C. § 1981(d); 42 U.S.C. § 1475. Also, unlike the private lender, the FmHA is required to make provision for the borrower's living and operating expenses. *See,* 7 C.F.R. § 1962.17. Finally, loan programs with the FmHA, unlike programs with private lenders, are not terminated by simple delinquency; instead, the agency must consider, among other things, whether the borrower's inability to pay is due to a lack of diligence, unsound farming, or circumstances beyond the borrower's control. *See,* 7 C.F.R. 1962.4(g).

The defendants argue that the plaintiffs' interest in continuing their participation in the farmer loan program is not a legitimate property interest. They argue that this interest is merely an abstract need or desire and under the holding of *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) does not qualify as a property right. However, this court finds otherwise. When a borrower begins a loan program he has a strong expectation that it will continue to its scheduled date of completion. Further, when he makes up his Farm and Home Plan with the FmHA the borrower has a strong expectation he will receive the *necessary* living and operating expenses called for in the plan. That the borrower's plan may be terminated for default does not defeat these expectations anymore than such possible termination for ineligibility would defeat the expectation of

persons receiving social assistance and food stamps. Just so, the Supreme Court has recognized that welfare recipients have a legitimate expectation that their benefits will continue. *Goldberg v. Kelly,* 397 U.S. 254, 261–62, 90 S.Ct. 1011, 1016–1017, 25 L.Ed.2d 287 (1970).

Given the social welfare dimension of FmHA farmer loan programs, the court must determine whether a hearing is required prior to FmHA's termination of a borrower's loan program, termination which begins with the FmHA's refusal to release income for living and operating allowances. Presently, the county supervisor makes this decision with the advice of the state director or the county committee, but without any input from or notice to the borrower. To answer this question, the court must turn to the standards for due process in termination of governmental benefits articulated by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–903, 47 L.Ed.2d 18 (1976); quoted in *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 17–18, 98 S.Ct. 1554, 1564, 56 L.Ed.2d 30 (1978):

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Regarding the first factor, the court finds that the private interest involved here is significant since the termination of allowances for necessary living and operating expenses can leave a farm family without money for food and cause the permanent cessation of all farming operations. Plain-tiffs have asserted that all farmers in this position are ineligible for public assistance or legal aid because of their land and property holdings even though overall they have a negative net worth.

In this respect this case is like *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In *Goldberg,* a case where the plaintiffs successfully challenged the termination of welfare benefits without a prior hearing, the Court stated:

> [T]he crucial factor in this context—a factor not present in the case of the blacklisted government employee, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy.

397 U.S. at 264, 90 S.Ct. at 1018.

Further, the plaintiffs' interest here seems to be stronger than or least as strong as the plaintiffs in *Memphis Light,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30, where the Supreme Court found a utility user's interest in continued service warranted a pre-termination process. The Court wrote: "Utility service is a necessity of modern life; indeed, the discontinuance of water or heating for even short periods of time may threaten health and safety." 436 U.S. at 18, 98 S.Ct. at 1565.

As to the second factor, the risk of erroneous deprivation, the court finds that the existing procedure is not sufficient to protect against wrongful termination. Indeed, the Supreme Court has focused its consideration of this factor on the adequacy of the procedures to ensure accuracy and ignored or discounted statistical evidence of the frequency of erroneous deprivation. *See,*

*Mathews v. Eldridge,* 424 U.S. 319, 343, 346–47, 96 S.Ct. 893, 907, 908–909, 47 L.Ed.2d 18 (1976).

In this respect, the court finds that the procedure used for termination is woefully inadequate if not non-existent: it is entirely unilateral; it requires no notice to the borrower prior to termination; it provides no opportunity for comment; it provides no notice of the right to appeal the termination until over sixty days after the termination of necessary living and operating allowances; and it allows appeal of the termination, at the very earliest, over 60 days from the date of termination. The most positive feature of the existing procedure is that it requires the county supervisor to seek the advice and recommendation of the state director or the county committee prior to termination.

Thus, the pre-termination procedure here possesses none of the provisions for notice or an opportunity for comment that led the Supreme Court to uphold the social security procedure at issue in *Mathews.* 424 U.S. at 345–46, 96 S.Ct. at 907–908. The procedure here is further unlike the procedure in *Mathews* in that the determination of "default" (as specially defined in 7 C.F.R. 1962.4(g)) required for termination is not a "more sharply focused and easily documented decision than the typical determination of welfare entitlement." 424 U.S. at 343, 96 S.Ct. at 907. Rather, as pointed out above, determination of default may involve among other things consideration of the farmer's ability to farm and diligence. *See also,* 7 C.F.R. 1960.15(a)(1)(i–x); 7 C.F.R. 1960.5(a)(2).

The third factor concerns the government's interest in not providing more extensive pre-termination procedures. The government will no doubt have to bear the extra cost of paying out living and operating expenses before a hearing is held, if the borrower requests such a hearing. Defendants have provided no estimate of this cost. The costs of holding a hearing itself should not be burdensome since the government already provides for a hearing after termination. Here the only difference is that the hearing is before termination. At any rate, this court has already held that pursuant to 7 U.S.C. § 1981a, the FmHA must hold a pre-termination hearing, and thus, expanding this hearing to include the issue of default would not likely create much if any additional cost for the government, since the standards for default are very similar to the standards for loan deferral.

Considering all three of the above factors, this court finds that the plaintiffs' interest in having a pre-termination hearing outweighs the defendants' in not providing such a hearing. This hearing will provide the plaintiffs with the opportunity to add omitted evidence and clarify erroneous factual evidence before their income for necessary living and operating expenses is terminated. To implement this hearing, the defendants must provide the borrower with notice of his opportunity to request a hearing on the validity of his termination and a statement of the reasons for termination. However, for the reasons already stated, the defendants need not promulgate regulations to this effect. As to the plaintiffs' arguments regarding the built-in bias of using the state director or other district directors as hearing officers, the court does not have sufficient evidence to conclude that such directors had an active role in the prior decision, and hence does not now require any alteration of this practice although it will further consider this issue in its order for permanent injunction.

Having determined that both parts of plaintiffs' motion for preliminary injunction have substantial merit, the court is ready to determine how the preliminary injunction would affect the public interest.

(4) What impact would granting injunctive relief have on the public interest?

This question is essentially the same question the court addressed above in its discussion of the government's interest, and need not be discussed again except to stress that the public interest is not simply to save

money but also to help citizens feel that they have been dealt with fairly and to avoid erroneous deprivation of essential benefits.

Based on the foregoing the court concludes:

1. That the motion for judgment for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6), is considered as a part of the Rule 56 motion for summary judgment of dismissal, and that this motion should be denied.

2. That this is a proper case for the designation of a class of plaintiffs pursuant to Rule 23(b)(2).

3. That the plaintiff class is entitled to a preliminary injunction pursuant to Rule 65.

Therefore it is ordered:

1. That the motion for summary judgment of dismissal is denied.

2. That this case is designated as a class action and

A. The class is certified as "all persons who have obtained a farmer program loan from the Farmers Home Administration, and who are or may be eligible to obtain a farmer program loan from the Farmers Home Administration, and whose loans are or will be administered through the Farmers Home Administration offices within the state of North Dakota."

B. A status conference is set for the 23rd day of May in Bismarck, N.D., at 10:00 a.m., for the purpose of resolving problems inherent in the administration of this class action, such as control of discovery and resolution of trial problems.

3. That the defendants, their agents, subordinates and employees are enjoined until further order of this court from terminating the living and operating allowance previously determined in the administration of any existing loan until the defendants shall give any plaintiff against whom defendants propose to proceed at least 30 days notice:

A. That informs the borrower of his right to a hearing to contest the termination and to establish eligibility for loan deferral pursuant to 7 U.S.C. § 1981a;

B. That provides the borrower with a statement that gives the reasons for the proposed termination;

C. That informs the borrower of the factors that determine eligibility for loan deferral;

D. That informs the borrower of the official before whom the borrower may request a hearing. The official designated shall not have been actively involved in the initial decision of termination.

4. That if a hearing is held pursuant to section 3 above, the hearing officer shall present his decision in writing, giving his reasons therefore, which decision shall be furnished to the borrower.

5. That the defendants, their agents, subordinates, and employees, are enjoined until further order of this court from

(a) Accelerating the indebtedness of the plaintiffs;

(b) Foreclosing on the real property or chattels of the plaintiffs,

(c) Demanding voluntary conveyance by the plaintiffs

(d) Repossessing chattels of the plaintiffs or in any way proceeding against or depriving the plaintiffs of property in which the defendants have a security interest,

until defendants shall have given any plaintiffs against whom the defendants propose to proceed at least 30 days notice:

A. That informs the borrower of his right to a hearing to contest the proposed action and to establish eligibility for loan deferral pursuant to 7 U.S.C. § 1981a;

B. That provides the borrower with a statement that gives the reasons for the proposed termination;

C. That informs the borrower of the factors that determine eligibility for loan deferral;

D. That informs the borrower of the official before whom the borrower may request a hearing. The official designated shall not have been actively involved in the initial decision of termination.

6. That if a hearing is held pursuant to section 5 above, the hearing officer shall present his decision in writing, giving his reasons therefore, which decision shall be furnished to the borrower.

The bond normally required for the preliminary injunction is waived because of the indigency of the plaintiffs and because the security held by the FmHA is pledged in part to cover the costs of protecting the lien.