Dwight COLEMAN, Lester Crowsheart, Sharon Crowsheart, Russel Folmer, Anna Mae Folmer, George Hatfield, June Hatfield, Donald McCabe, Diane McCabe, Gary Barrett, Rosemary K. Barrett, Richard L. Harmon, Betty J. Harmon, Larry L. Robertson, Nancy K. Robertson, Ross Wade and Maureen Wade, on behalf of themselves and others similarly situated, Plaintiffs,

v.

John R. BLOCK, Secretary of Agriculture; Charles W. Shuman, Administrator of the Farmers Home Administration; Ralph W. Leet, State Director of the Farmers Home Administration; Harold T. Aasmundstad, Glen W. Binegar, Allen G. Drege, Dennis W. Larson, Odell O. Ottmar, and Joseph J. Schneider, as District Directors of the Farmers Home Administration for North Dakota; and Samuel Delvo, Lorace Hakanson, Larry Leier, Charles Schaefer and James Well, as County Supervisors of the Farmers Home Administration in North Dakota, Defendants.

Civ. No. A1–83–47.

United States District Court,
D. North Dakota,
Southwestern Division.

March 3, 1986.

998

Robert Vogel, Grand Forks, N.D., William R. King, Atlanta, Ga., Burt Newborne, American Civil Liberties Union, New York City, Alan Kanner, Philadelphia, Pa., William, Reesman & Tate, Booneville, Mo., Martha A. Miller, Atlanta, Ga., James T. Massey, Lynn A. Hayes, Minneapolis, Minn., for plaintiffs.

Arthur R. Goldberg, Merril Hirsh, Dept. of Justice, Civil Div., Washington, D.C., Gary Annear, Asst. U.S. Atty., Fargo, N.D., for defendants.

## MEMORANDUM AND ORDER

VAN SICKLE, Senior District Judge.

Plaintiffs move to amend and modify this court's final injunctive order of February 17, 1984 by striking the following underscored language:

> [T]he defendants, their agents, subordinates, and employees are enjoined from proceeding to liquidate, or to terminate the living and operating allowance previously determined in the administration of any existing loan unless [prescribed notice and hearing requirements are followed],

and by substituting for the underscored phrase:

> language which makes it clear that all farmer-borrowers have a statutory and regulatory entitlement to reasonable family living and farm operating allowances and that those allowances cannot be terminated until the borrower has been provided the due process protections listed under Paragraph B of the Court's February 17, 1984 Order.

Plaintiffs' motion follows this court's denial of a motion to find contempt filed by Joe Nelson and Louise Nelson. In an order filed in the contempt action on June 17, 1985, this court held that the injunction's language ("previously determined in the administration of any existing loan") was directed only to existing farm and home plans. Plaintiffs contend that that interpretation of the final injunction allows FmHA to effectively "starve out" borrowers without providing due process protections.

### FACTS

The facts supporting the Nelson motion for contempt are summarized as follows. The Nelsons borrowed $40,000.00 for operating expenses from FmHA in 1983. In conjunction with that loan, they and the FmHA county supervisor developed and signed a farm and home plan for the period from April 6, 1983 through December 21, 1983. In September, 1983, the Nelsons borrowed an additional $22,000.00 to finance planting an additional 500 acres of 1984 winter wheat. Proceeds from sale of the 1984 wheat were to be applied to the $22,000.00 loan. Because the yield on the 1984 crop was lower than expected, sale of the crop netted only approximately $16,000.00. The FmHA county supervisor insisted that all the proceeds be applied to the $22,000.00 loan, and thus refused to release any of the proceeds for living or operating expenses. FmHA denied further financing to the Nelsons on April 6, 1984. A proposed farm and home plan was submitted in conjunction with the application for another loan, but was not approved by FmHA officials.

Plaintiffs submitted written declarations of several FmHA borrowers in support of their motion. Robert Smith, of Murdoch, Minnesota, stated that he did not have a current farm and home plan approved by an FmHA official, that he had received no operating loans from FmHA during the current production cycle, and that if FmHA refuses to release farm production income for living and operating expenses, his family cannot continue to operate the farm. Robert Hansen, of Belgrade, Minnesota, stated that he did not have a current farm and home plan approved by an FmHA official, that he had received no operating loans from FmHA during the current production cycle, and that if FmHA refuses to release farm production income for living and operating expenses, his family cannot continue to operate the farm. Dwight Coleman, of Dunseith, North Dakota, filed a declaration making statements virtually identical to those made by Hansen and Smith.

FmHA farmer-borrower Betty Puckett, of Lecompte, Louisiana, stated that when she applied for a 1984 FmHA operating loan, she signed a blank farm and home plan at FmHA's request and that the county supervisor later completed and signed that form. Puckett's request for a 1984 operating loan was denied. Puckett states that the county supervisor then refused to authorize releases from proceeds of a 1983 soybean crop for living and operating expenses. Puckett received a written response from the state FmHA office indicating it would not make the requested releases because the farm and home plan prepared in conjunction with the 1984 loan application stated the crop proceeds would be applied to the debt to FmHA. Puckett states further that if FmHA continues to refuse to authorize release of farm production income for living and operating expenses, continued operation of the farm will be jeopardized.

FmHA farmer-borrower Gloria Ridenhour, of Delaware, Oklahoma, filed a declaration stating that she is currently indebted to FmHA, but does not have a current farm and home plan because the county supervisor, in 1984, suggested a quiet liquidation of the farming operation. She stated further that FmHA had subordinated its security interest in a wheat crop to a local bank, and that though the bank had agreed to release a portion of those crop proceeds to pay living and operating expenses, FmHA has refused to authorize that release under the subordination agreement.

Ridenhour states finally that if FmHA continues to refuse to authorize releases of farm production income for living and operating expenses, the family cannot continue to operate the farm.

Paul Menzies, of East Prairie, Missouri, filed a declaration stating that he received a 1984 FmHA operating loan and that the proceeds from that loan, as well as all income from sale of the 1984 crop, were placed in a bank account over which FmHA had control. Menzies further stated that FmHA has refused to release proceeds from sale of the 1984 crop to pay living and operating expenses, that his request for a 1985 FmHA operating loan was denied, and that he has never received a notice of acceleration from FmHA.

In addition to the declarations of FmHA borrowers, Plaintiffs filed an affidavit of Thomas A. Dickson, an attorney who has represented FmHA borrowers. He states that an FmHA county supervisor told him it was the policy of his county office to not release farm production income until a crop lien for the following growing season was signed, regardless of FmHA's extension of operating loans.

Finally, Plaintiffs submitted a declaration of Larry G. Smith, a farm credit counselor for the State of North Dakota. He stated that at least two FmHA borrowers had told him that FmHA officials had requested the borrowers' signatures on 1986 crop security agreements prior to releasing funds from 1985 crop proceeds covered by FmHA security agreements. Attached to Smith's declaration was a copy of a letter Smith believed was sent to all FmHA borrowers in at least one North Dakota county. The letter states that 1986 crop security agreements must be signed before releases are made on 1985 farm proceeds and outlines priorities for release:

1. Chattel and crop subordinations,
2. Operating expenses according to farm and home plan,
3. FmHA annual installments,
4. Real estate payments and real estate taxes,
5. Planned secured debts,
6. Delinquencies on secured debts and delinquent taxes,
7. Unsecured debts.

Defendants submitted declarations of several FmHA officials. Bernie E. Kyllo, Chief of Farmer Programs for the North Dakota state FmHA office, stated that FmHA employees in North Dakota have been instructed "to release proceeds from the sale of chattel security normally sold in the operation of the farm based on a prior year's plan regardless of whether the plan has expired or not." Further, Kyllo responded to Coleman's declaration by stating that Coleman had a farm and home plan approved for 1985, that on March 7, 1985 FmHA released proceeds from Coleman's sale of his 1984 grain crop for operating expenses, that FmHA believes Coleman has sold livestock on which FmHA holds a security interest without reporting receipt of the sale proceeds to FmHA, and that Coleman had requested no releases of crop proceeds during the years 1982 through 1984. James P. Moen, Chief of Farmer Programs for the Minnesota state FmHA office, stated that FmHA employees in Minnesota had been instructed "to release proceeds from the sale of chattel security normally sold in the course of operating the farm in accordance with the most recent farm and home plan even if that plan has expired." Moen responded to Hansen's declaration; he stated that Hansen's most recently approved farm and home plan was for 1983, that FmHA had not received the payments which it was projected to receive in the 1983 plan, that the only money FmHA had received from Hansen from 1983 through September 30, 1985 was small amounts for use of cash collateral as ordered by a bankruptcy court, and that FmHA has not refused any requests for release of farm proceeds to Hansen during 1984 or 1985. Moen also responded to Smith's declaration; he stated Smith's most recent farm and home plan was for 1984, that Smith's proposed 1985 plan was not approved because FmHA felt projected income and operating expenses

were unrealistically high, that FmHA approved Smith's January 1, 1985 request for release of proceeds, and that FmHA has not refused to release proceeds from the sale of chattel security to Smith.

Glenn J. Hertzler, Jr., Acting Assistant Administrator for Farmer Programs for the national FmHA office, stated that a current year's farm and home plan, if one exists, forms the basis for FmHA's decisions on release of chattel proceeds. He stated that FmHA does not require an annual farm and home plan unless a borrower is receiving an FmHA loan or other FmHA assistance, provided a borrower is not making major changes in farm operation. Hertzler stated further that when there is no current farm and home plan, "releases may be made based on the County Supervisor's knowledge of the borrower's current operations, plus inquiry and verification of the facts about the borrower's current operation in the running case record (§ 1962.-17(d)(2)). The release decision is an informal one that is made when the borrower reports the disposition of normal income security, or asks the County Supervisor to endorse a check received as proceeds from a sale."

## DISCUSSION

Plaintiffs argue that the injunction, as presently worded and interpreted, allows FmHA to effectively force borrowers to liquidate or terminate farming operations without affording mandated procedural due process. Many members of the Plaintiff class, as a condition for receiving loans from FmHA, have granted FmHA a security interest in all farm proceeds, *i.e.*, livestock, crops, milk production. Many members of the Plaintiff class depend on FmHA's release of its security interest in those proceeds to pay essential family living and farm operating expenses. Many members of the Plaintiff class do not have current farm and home plans, even though FmHA continues to hold a security interest in their farm production income. Plaintiffs do not allege FmHA has refused to grant releases incorporated into a farm and home

plan. Rather, they challenge FmHA's refusal to release proceeds for living and operating expenses when a borrower, who has no current farm and home plan, has unexpected living expenses or when a borrower's income is less than projected.

FmHA regulations in effect prior to November 1, 1985 established priorities for the use of farm production proceeds when income was lower than projected. The first priority was for payment of family living and farm operating expenses and the second priority was for payments on debts to FmHA:

> *Distribution of income from normal income security.* On finding that the amount of income originally planned for the year will not be received, the County Supervisor will determine, in consultation with the borrower, how to use the income that is available during the remainder of the planned year as shown on Form FmHA 431–2 or FmHA 431–4.... Priorities in distributing the income that will be available are as follows:
>
> (i) Pay necessary farm, home, and other expenses planned for payment by cash as incurred.
>
> (ii) Prorate repayments or credit advance for necessary farm, home, and other operating expenses to FmHA and other creditors.
>
> (iii) Make planned payments on other debts as shown on Table K of Form 431–2 [Farm and Home Plan] or Part I of Form FmHA 431–3....

7 C.F.R. § 1962.17(c) (1985). *See also* 7 C.F.R. § 1924.57(c)(4) (1985).

Plaintiffs argue that FmHA borrowers have a constitutionally protected property interest in the release of farm production income which arises from FmHA's regulations and from FmHA loan agreements, and which exists without regard to whether a current farm and home plan exists. They argue their position is consistent with the social welfare goals of the FmHA loan program. Plaintiffs argue also that a borrower's agreement to apply farm proceeds to an FmHA debt (such as on "Schedule K" of the standard FmHA farm and home

plan) cannot be considered a knowing and voluntary waiver of the right to due process protections should actual farm production income fall below projected farm production income.

Defendants raise several arguments in opposition to the motion to modify the injunction. They argue that Plaintiffs have demonstrated no actual injuries justifying the relief they seek, that Plaintiffs have demonstrated no "changed circumstances" or failure of the final injunction's purpose justifying modification of the injunction, and that Plaintiffs should not now be allowed to raise matters they could have raised initially. Further, they argue Plaintiffs' waiver analysis is irrelevant, because a borrower and FmHA are actually negotiating a contractual agreement for the release of farm production income in negotiating a farm and home plan. Finally, they argue FmHA's new regulations, adopted November 1, 1985, require agreement between a borrower and FmHA on release of farm production income regardless of whether there is a current farm and home plan and that the new regulations would prevent termination of release of those proceeds without notice and a hearing.

■ This court will first address Defendants' assertion that Plaintiffs have not demonstrated changed circumstances justifying modification of the injunction. A district court has inherent power to modify a permanent injunction when warranted by changed circumstances. *U.S. v. Swift & Co.*, 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932). Where modification is sought by the party in whose favor the injunctive relief was granted, the standard for determining whether modification is appropriate is whether the purposes of the litigation as incorporated into the injunctive decree have been fully achieved. *See U.S. v. United Shoe Machinery Corp.*, 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562 (1968); *see also U.S. v. City of Chicago*, 663 F.2d 1354, 1360 (7th Cir.1981). This court concludes that Plaintiffs have shown facts sufficient to allow this court to consider whether a modification of the injunc-

tion to fully effectuate its purposes is necessary.

In their extensive briefs on this motion, both parties discussed the November 1, 1985 regulations, though Plaintiffs took the position that those regulations are not relevant to this motion. This court recently granted Plaintiffs' motion to file a supplemental complaint to raise allegations concerning those new regulations. The instant motion will be decided without regard to those regulations.

FmHA distinguishes between "termination" of releases of farm production income and "refusals to release" farm production income. "Termination" occurs when all releases of farm production income are frozen at the time a borrower's farming operation is liquidated; FmHA asserts this practice has not been followed since this court's injunction of November 14, 1983. A "refusal to release" is made during the course of loan servicing when FmHA denies a borrower's individual request for release.

A decision on the instant motion requires an analysis of the nature of an FmHA borrower's constitutionally protected interest. In its order issuing a preliminary injunction on Plaintiffs' principal complaint, this court observed:

> The defendants argue that the plaintiffs' interest in continuing their participation in the farmer loan program is not a legitimate property interest. They argue that this interest is merely an abstract need or desire and under the holding of *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701 [2709] 33 L.Ed.2d 548 (1972) does not qualify as a property right. However, this court finds otherwise. When a borrower begins a loan program he has a strong expectation that it will continue to its scheduled date of completion. Further, when he makes up his Farm and Home Plan with the FmHA the borrower has a strong expectation he will receive the *necessary* living and operating expenses called for in the plan. That the borrow-

er's plan may be terminated for default does not defeat these expectations anymore than such possible termination for ineligibility would defeat the expectation of persons receiving social assistance and food stamps. Just so, the Supreme Court has recognized that welfare recipients have a legitimate expectation that their benefits will continue. *Goldberg v. Kelly,* 397 U.S. 254, 261–62, 90 S.Ct. 1011, 1016–17, 25 L.Ed.2d 287 (1970). (Emphasis in original).

*Coleman v. Block,* 562 F.Supp. 1353, 1364 (D.N.D.1983). In that same order, as well as in the later order for permanent injunctive relief, Defendants were enjoined from "repossessing chattels of the plaintiffs or in any way proceeding against *or depriving the plaintiffs of property in which the defendants have a security interest," id.* at 1367, unless specified due process protections are provided. *See also Coleman v. Block,* 580 F.Supp. 194, 211 (D.N.D. 1984). In its order granting permanent injunctive relief, this court wrote:

> *Eldridge [Matthews v. Eldridge,* 424 U.S. 319 [96 S.Ct. 893, 47 L.Ed.2d 18] (1976) ] suggests that a threshold problem is still whether the interest is protected by due process, i.e., whether there exists in the mortgaged chattels a property interest protected by the Fifth Amendment. [Citation omitted.] Whether such a threshold problem is advisable or not, a property interest clearly exists in a chattel mortgage. The distinction between a possessory interest and a security interest, and the relative rights attendant to each interest need not be elaborated here. *See, e.g.,* U.C.C. § 9–501. And even if a property interest is not found, FmHA is obligated to set up a meaningful appeal process. Anything less would be contrary to the Constitution as well as the administrator's legal authority.

*Coleman,* 580 F.Supp. at 207.

Also relevant is the principle, which this court has recognized in earlier orders, that the fruits of a person's labor are entitled to certain protections from creditors:

> There is deeply embedded in the law ... a distinction between farm products on the one hand, and equipment and inventory on the other hand. This difference, although not precise, is important because it points us towards a fundamental element of our social thinking, *i.e.,* the biblical injunction that "a laborer is worthy of his [or her] hire."

*Id.* at 203.

■ FmHA borrowers have a strong expectation that releases of FmHA's security interests in farm production income for necessary living and operating expenses will be made, whether or not a current farm and home plan exists; their interest in those releases is protected by the due process clause of the fifth amendment. That interest arises from the special protections afforded farm income as a form of wages, as well as from FmHA's regulations. A farm and home plan based on projected farm income which is higher than actual farm income cannot be considered a borrower's agreement to FmHA's later refusal to release its security interest when income is less than expected. Though not basing its decision on this provision, this court notes the protection for "normal income security" afforded by the Food Security Act of 1985, Pub.L. No. 99–447 (1985), which amended 7 U.S.C. § 1985.

■ This court concludes that the language of the permanent injunction is inadequate to insure FmHA borrowers' rights in "normal income security" or farm production income are protected as guaranteed by the due process clause of the fifth amendment. Because of that inadequacy, the purposes of the litigation as incorporated into the injunctive decree have not been fully achieved and modification of that decree is in order.

■ Modification of the decree will not take the form of deleting a phrase and inserting another as suggested by Plaintiffs; rather it will take the form of adding

a paragraph addressed solely to those situations where FmHA holds a security interest in a borrower's "normal income security" or farm production income, the borrower does not have a current farm and home plan approved by an FmHA official, and FmHA denies a request for release of FmHA's security interest for purposes of paying living and operating expenses. While a borrower is entitled to an opportunity to request a hearing to contest a refusal to release FmHA's security interest, a borrower is not entitled to such a hearing prior to FmHA's denial decision. The procedural protections to which a borrower is entitled must be tailored so as to be practical. *See Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The decisions at issue are a part of the daily operation of the FmHA county offices. The decisions can be made only after borrowers request releases. FmHA cannot, as a practical matter, be compelled to hold a hearing prior to making a decision to deny the requested release. However, the borrower must be given a written notice outlining the right to a hearing to be held at the earliest date practicable, and in no event more than twenty days after the denial of the requested release. That hearing, like the hearings required under the present language of the injunction, may be informal; notes of the hearing, as distinguished from a verbatim record, must be preserved by FmHA.

In reaching this decision, as in its earlier orders, this court does not pass judgment on the wisdom of FmHA's decisions in the cases of individual borrowers. This order is addressed only to Plaintiffs' rights to notice of, and an opportunity to contest, FmHA's decisions.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED:

1). Plaintiffs' motion to amend and modify this court's final injunctive order of February 17, 1984 is granted.

2). This court's order of February 17, 1984 is amended by adding the following paragraph F:

Where FmHA holds a security interest in a borrower's "normal income security" or farm production income and a borrower does not have a current farm and home plan approved by an FmHA official, defendants are enjoined from refusing to release FmHA's security interest to provide an allowance for *necessary* living and operating expenses unless:

1. Defendants give any plaintiff as to whom a requested release for necessary living and operating expenses is refused a notice:

   a. That informs the borrower of the right to a hearing, within twenty days, to contest the refusal and to establish eligibility for loan deferral pursuant to 7 U.S.C. § 1981a;

   b. That provides the borrower with a statement that gives the reasons for the refusal to grant the requested release;

   c. That informs the borrower of the factors that determine eligibility for loan deferral;

   d. That informs the borrower of the official who would preside at the hearing. The official designated shall not have been actively involved in the initial decision to deny the requested release.

2. The official presiding at any hearing shall present his or her decision in writing, giving the reasons therefor. The written decision shall be furnished to the borrower.