**UNITED STATES of America, Appellee,**

v.

**Randall O. HINTZMAN, Appellant.**

No. 85–5404.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1986.

Decided Dec. 9, 1986.

David C. Thompson, Fargo, N.D., for appellant.

Rodney S. Webb, U.S. Atty., Fargo, N.D., for appellee.

Before LAY, Chief Judge, BOWMAN, Circuit Judge, and TIMBERS,* Senior Circuit Judge.

BOWMAN, Circuit Judge.

In May 1985 a federal grand jury indicted Randall Hintzman for fraudulent conversion of property in which the Secretary of Agriculture held a security interest arising out of farm financing provided to Hintzman by the Farmers Home Administration (FmHA). After a jury trial in August 1985, Hintzman was found guilty and was convicted of a violation of 18 U.S.C. § 658. He appeals that conviction. We affirm.

## I.

In 1976, Hintzman purchased a 280–acre cattle and dairy farm in North Dakota. The down payment, representing 65% of the approximate $120,000 purchase price, was financed by a loan from FmHA. In subsequent years through 1982, FmHA also provided financing to cover operating expenses of the farm. As collateral for both the purchase money loan and the additional operating financing, Hintzman gave FmHA a security interest in, *inter alia,* all milk produced on his farm and in the proceeds from the sale of the milk. Both Hintzman and his wife Susan Hintzman signed these security agreements, which provided that the borrowers were not to sell or dispose of the collateral without the prior written consent of FmHA.

In March 1980, Randall Hintzman and FmHA entered into an "Assignment of Proceeds From the Sale of Dairy Products and Release of Security Interest" Agreement (the Release Agreement). The Release Agreement provided that, upon the sale by Hintzman of dairy products produced on his farm, 65% of the proceeds would be forwarded to FmHA for repayment of the outstanding debt while 35% would be released from FmHA's security interest and returned to Hintzman to meet the operating expenses of the farm. In February 1981, Hintzman directed the purchaser of his milk to divide the proceeds of milk purchased from the farm into two separate accounts. For each purchase, the purchaser was to issue one check made payable to Randall Hintzman and one payable to Susan Hintzman.

From that time until October 1984, the purchaser made separate payments to the Hintzmans on each purchase of milk. For payments made to Randall Hintzman, the 65% deduction due FmHA under the Release Agreement continued to be made. Through an oversight, however, the purchaser failed to deduct the assigned percentage from payments made to Susan Hintzman, even though such payments were subject to the same security interest and the deduction should have been made. Trial testimony indicated further that the percentage of proceeds paid to Susan Hintzman increased over the next several years, while the percentage paid to Randall Hintzman correspondingly decreased. As a result, over a period of roughly three and one-half years the purchaser paid approximately $120,000 to Mrs. Hintzman without deducting $77,849.02 due FmHA under the Release Agreement. FmHA discovered the payments to Mrs. Hintzman in approximately July 1984. Believing that Randall Hintzman intentionally had defrauded the government of proceeds due under the security agreements and the Release Agreement, FmHA referred the case to the United States Attorney for prosecution.

In presenting the case for an indictment to the grand jury, the government called only one witness, a Special Agent of the Department of Agriculture who had investigated the case. On the testimony of the Special Agent, some of which was hearsay, the grand jury returned a two-count indictment against Hintzman. The first count charged him with fraudulent conversion of livestock pledged as security for FmHA financing. The second count involved a similar charge with respect to Hintzman's conversion of proceeds from the sale of

* The HONORABLE WILLIAM H. TIMBERS, Senior United States Circuit Judge for the United States Court of Appeals, Second Circuit, sitting by designation.

secured milk. At the subsequent jury trial, Hintzman was acquitted on the first count, but convicted on the second. For reversal, Hintzman raises several issues, and we deal with each of them in turn.

## II.

### A.

■ Hintzman first argues that the District Court erred in denying his motion to dismiss the indictment. Hintzman charges that he was the target of unconstitutionally arbitrary and selective prosecution. Our decisions in *United States v. Holmes*, 794 F.2d 345 (8th Cir.1986), and *United States v. Catlett*, 584 F.2d 864 (8th Cir.1978), set forth the two elements required to establish a prima facie case of selective prosecution. The defendant must demonstrate that (1) "he has been singled out for prosecution while others similarly situated have not been prosecuted" for similar conduct, *Catlett*, 584 F.2d at 866, and (2) "the government's action in thus singling him out was based on an impermissible motive such as race, religion, or the exercise by defendant of constitutional rights." *Holmes*, 794 F.2d at 347. The defendant's burden is a heavy one, and because we afford broad discretion to prosecuting authorities, we require "a showing of 'intentional and purposeful discrimination.'" *United States v. Eklund*, 733 F.2d 1287, 1290 (8th Cir.1984) (quoting *Catlett*, 584 F.2d at 866), *cert. denied*, 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985). Absent this prima facie showing, the prosecution will be presumed to have been undertaken in good faith. *United States v. Ojala*, 544 F.2d 940, 943 (8th Cir.1976).

■ Hintzman admits that other similarly situated individuals have been prosecuted for similar conduct, but he argues that these prosecutions are merely evidence of selective prosecution of an "institutional" nature. Even if the prosecution of others similarly situated might somehow be viewed as not being fatal to a defendant's proof of the first prong of *Catlett*, it is under no circumstances an adequate basis for meeting that test. Hintzman has not presented any evidence that he or anyone else has been singled out for prosecution while others similarly situated have not been prosecuted. Similarly, Hintzman has failed to present any evidence of an impermissible motive for his prosecution. Rather, to establish both of the required elements of his selective prosecution claim, he relies exclusively on a footnote in a civil case involving FmHA foreclosure proceedings.

In *Coleman v. Block*, 580 F.Supp. 194 (D.N.D.1984),[1] the court considered the FmHA's practice of automatically refusing a borrower's application for a loan deferral if the case had been referred for prosecution. The court stated that "[t]he evidence showed that FmHA field officers exercise untrammeled discretion in determining whether or not to present a claimed conversion for criminal prosecution." *Id.* at 209 n. 54. The court then concluded that because the decision to refer for prosecution was wholly discretionary, an application for deferral should not be refused solely because the borrower's case had been referred for prosecution. *Id.* Hintzman argues that because the same FmHA field officers involved in *Coleman* recommended his case for prosecution, the finding in *Coleman* is effective in this criminal case

---

1. This was the fourth in a series of decisions arising out of civil litigation by a nationwide class of FmHA borrowers. In the original suit, North Dakota borrowers challenged the agency's default, appeal and foreclosure procedures. In *Coleman v. Block*, 562 F.Supp. 1353 (D.N.D.1983) (*Coleman I*), a statewide class was certified and a preliminary injunction against FmHA was granted. The class was amended to include a nationwide class of similarly situated borrowers in *Coleman v. Block*, 100 F.R.D. 705 (D.N.D. 1983) (*Coleman II*), and a preliminary injunction for the nationwide class was issued in *Coleman v. Block*, 580 F.Supp. 192 (D.N.D.1983) (*Coleman III*). In *Coleman v. Block*, 580 F.Supp. 194 (D.N.D.1984) (*Coleman IV*), the preliminary injunction was made permanent, and in *Coleman v. Block*, 632 F.Supp. 997 (D.N. D.1986) (*Coleman V*), the permanent injunction was modified to include borrowers not currently operating under an approved FmHA Farm and Home Plan.

as a determination that the referral was selective and arbitrary.

We find no merit in this argument. Even if a finding of "untrammeled discretion" in a civil case were binding against the government in this criminal case—a question we need not decide—we still could not accept that finding as evidence of selective or arbitrary prosecution. To say that a decision is purely discretionary is not to say either that the decision involves discrimination or that the nature of any such discrimination is arbitrary or impermissible. A finding that FmHA field officers exercise untrammeled discretion merely indicates that decisions to refer for prosecution are solely within their power and are essentially unreviewable. The finding says nothing about arbitrary or discriminatory selection of individual defendants. We conclude that Hintzman has failed to establish either of the elements required by *Catlett* and *Holmes,* and that the District Court was correct in refusing to dismiss the indictment on the ground of selective prosecution.

### B.

■ Hintzman's second claim is that the grand jury that indicted him was misled by the prosecutor and the government witness. He suggests that because the sole witness was a government agent with an alleged career interest in the prosecution, and because the evidence in part consisted of hearsay testimony which allegedly was presented as if it were firsthand knowledge, the grand jury was misled by the government.

As Hintzman concedes, the Constitution does not prohibit the use of hearsay testimony in grand jury proceedings, *United States v. Bednar,* 728 F.2d 1043, 1049 (8th Cir.), *cert. denied,* 469 U.S. 827, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984), and even an indictment based exclusively on hearsay may be valid. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). Hintzman apparently contends that the nature and quality of the hearsay evidence, rather than its mere existence, misled the grand jury. He also asserts that the prosecutor failed adequately to inform the jury of its right to subpoena witnesses for firsthand evidence, thereby misleading it as to the value of the hearsay evidence before it. These unsupported allegations are insufficient. As the District Court recognized, grand jury proceedings are afforded a strong presumption of regularity, and a defendant seeking to overcome that presumption faces a heavy burden. *United States v. Boykin,* 679 F.2d 1240, 1246 (8th Cir.1982). Hintzman failed to meet that burden in this case. The District Court explicitly found that there was no evidence in the record to indicate that the grand jury was misled, and we see no error in that finding. Moreover, a petit jury found Hintzman guilty beyond a reasonable doubt. Except in cases involving racial discrimination in the composition of the grand jury, a guilty verdict by the petit jury generally excuses errors at the grand jury level that are "connected with the charging decision...." *United States v. Mechanik,* — U.S. —, 106 S.Ct. 938, 942, 942 n. 1, 89 L.Ed.2d 50 (1986). The petit jury verdict here "demonstrates *a fortiori* that there was probable cause to charge ... [Hintzman] with the offense ... for which ... [he] was convicted." *Id.,* 106 S.Ct. at 940. Accordingly, the District Court was correct in declining to accept this argument as a basis for dismissing the indictment.

### C.

Hintzman's next argument also rests on language from the *Coleman v. Block* decisions. He first notes that *Coleman IV* and *Coleman V* held that FmHA borrowers had a constitutionally protected "expectation" that FmHA would release from its security interest farm production income sufficient to cover the operating and living expenses of the borrower's farm and family. *Coleman V,* 632 F.Supp. at 1003; *see also Coleman IV,* 580 F.Supp. at 203, 207–08. The court treated this expectation as a property interest protected by the due process clause of the fifth amendment. 632

F.Supp. at 1003. Hintzman argues that this property interest was superior to FmHA's security interest in the proceeds of milk produced on his farm. He submits that he cannot be found guilty of fraudulent conversion because the *Coleman* cases vested him with the exclusive right to use and dispose of the property he is charged with converting.

The property interest discussed in the *Coleman* cases was assumed to have arisen both from the borrower's participation in FmHA's comprehensive financing program and from an FmHA regulation in effect during the period in which Hintzman is charged with converting the milk proceeds. *Coleman I,* 562 F.Supp. at 1364; *Coleman V,* 632 F.Supp. at 1003 (citing 7 C.F.R. § 1962.17(c) (1985)). Understanding the nature of that property interest therefore requires some familiarity with the financing program.

In conjunction with FmHA farm financing, the borrower and FmHA customarily develop a comprehensive operating budget known as a Farm and Home Plan. As a key part of the typical Farm and Home Plan, FmHA agrees to release to the farmer a percentage of FmHA's security interest in projected farm production proceeds sufficient to cover projected farm expenses.[2] Not surprisingly, actual expenses

and actual proceeds often depart from plan projections, and the variance can render the agreed-upon release percentage insufficient to meet the farmer's necessary expenses. The regulation discussed in the *Coleman* cases established an apparently mandatory reallocation procedure to be followed in such circumstances, and provided that first priority in allocating available income was to go toward meeting necessary farm and home expenses.[3] The district court interpreted this regulation as requiring the FmHA to make such releases "for *necessary* living and operating expenses" and the court enjoined FmHA from refusing a borrower's request for release of the security interest unless FmHA provided the borrower with the opportunity for a hearing to contest the refusal. 632 F.Supp. at 1004 (emphasis in original).

■ Hintzman argues that the *Coleman* decisions preclude his conviction because they recognized a property interest of FmHA borrowers in their farm production proceeds. He submits that this interest prevents the government from proving, as an element of the charge of conversion, that the converted proceeds were the property of another. We emphatically reject this argument. We previously have observed that § 658 is not governed by the tort definition of conversion. *United*

---

**2.** The Hintzmans had an approved Plan for 1982 and 1983, but apparently did not have an approved Plan in either 1981 or 1984. However, over the entire relevant period, Randall Hintzman was a party to the Release Agreement. This Agreement is the means by which a borrower's farm production proceeds, which would normally go to FmHA in repayment of the debt, are released to the borrower to meet estimated expenses under the Farm and Home Plan. Accordingly, even though the Hintzmans had no comprehensive Plan for 1981 and 1984, the Release Agreement performed essentially the same function by releasing to Hintzman 35% of his production proceeds to meet current farm and home expenses.

**3.** The regulation, which has been amended subsequent to the *Coleman* decisions, read as follows during the time of those decisions and during the period relevant to the present case:

**Distribution of income from normal income security.** On finding that the amount of income originally planned for the year will not be received, the County Supervisor will determine, in consultation with the borrower, how to use the income that is available during the remainder of the planned year.... Priorities in distributing the income that will be available are as follows:
(i) Pay necessary farm, home, and other expenses planned for payment by cash as incurred.
(ii) Prorate repayments or credit advance for necessary farm, home, and other operating expenses to FmHA and other creditors.
(iii) Make planned payments on other debts as shown on Table K of Form 431–2 [Farm and Home Plan] or Part I of Form FmHA 431–3....
7 C.F.R. § 1962.17(c) (1985), *reprinted in Coleman V,* 632 F.Supp. at 1001.

*States v. Bellman,* 741 F.2d 1116, 1118 (8th Cir.1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1204, 84 L.Ed.2d 347 (1985). Section 658 prohibits the concealment, removal, disposal, or conversion of property "mortaged or pledged to" farm credit agencies. 18 U.S.C. § 658. The nature of secured lending is such that debtors and lenders each have property interests in the secured collateral. Accordingly, to conclude that Hintzman's property interest in proceeds from the sale of secured collateral precludes his conviction under § 658 would be to eviscerate the statute. We decline to adopt such an approach.

■ Hintzman also makes a more general argument that the property interest found in the *Coleman* cases gives the borrower unilateral authority to dispose of secured collateral to meet necessary farm and family expenses. Hintzman attempts to read the *Coleman* decisions as having decriminalized conscious fraud. He assumes that the recognition in *Coleman* of a constitutionally protected property interest in farm production proceeds totally defeats the government's security interest and entitles FmHA borrowers unilaterally to take additional proceeds whenever they decide that additional releases are necessary. Like the Fifth Circuit, which considered a similar defense to a § 658 prosecution, we believe that the *Coleman* decisions "did nothing of the sort." *United States v. Garth,* 773 F.2d 1469, 1474 (5th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 2246, 90 L.Ed.2d 693 (1986).

The civil remedies provided to FmHA borrowers in the *Coleman* decisions neither preclude nor impede criminal proceedings under § 658. *Coleman IV* explicitly observed that the criminal penalty of § 658 is an *additional* tool available to agricultural lending agencies of the United States, and that it serves "to bolster their secured creditor status." 580 F.Supp. at 204. Accordingly, the court severely limited the effect of its injunction against FmHA in cases where the borrower had been convicted under § 658. *Id.* at 211. Similarly, the *Coleman* cases do not suggest that the FmHA borrower's interest in the release of farm production proceeds defeats the government's security interest. Rather, as the court made clear, the borrower's interest merely entitles him to a hearing to contest FmHA's refusal to honor a request that additional proceeds be released to cover necessary expenses. *Coleman V,* 632 F.Supp. at 1004. An entitlement to request the release of additional funds and to have a hearing on that request is hardly a grant of authority to dispose of secured collateral without the knowledge and consent of the secured party.

It would be absurd to read the *Coleman* decisions as creating a unilateral right in FmHA borrowers to dispose of secured collateral without ever consulting FmHA. The "expectation" interest recognized in *Coleman I* was the product of the borrower's good faith participation in the FmHA lending program. 562 F.Supp. at 1364. The borrower's request to FmHA that funds be released, a demonstration of necessity, and cooperation between the borrower and FmHA are all required elements of any legitimate "expectation" interest in additional releases. Hintzman never made a request to FmHA to release additional funds, nor did he make any showing to the agency that additional funds were necessary to operate his farm or to support his family. The Release Agreement entitled FmHA to 65% of the proceeds from Hintzman's sale of secured collateral. He intentionally defrauded FmHA by diverting a substantial part of FmHA's share of the proceeds without the agency's knowledge or consent. Whatever expectation interest in additional releases he may have enjoyed as a result of his participation in the program did not defeat the government's security interest in the collateral, and he was not privileged to act as though the security interest and the Release Agreement did not exist. We hold that the *Coleman* decisions are no defense to this criminal proceeding.

**D.**

Finally, Hintzman seeks review of the District Court's order denying his motions to compel discovery with respect to the charges of selective prosecution and misleading the grand jury. District courts have broad discretion with respect to discovery motions, and we will uphold the decision of the district court unless, considering all the circumstances, "its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness" at trial. *Voegeli v. Lewis,* 568 F.2d 89, 96 (8th Cir. 1977); *United States v. Holmes,* 794 F.2d at 348. Our review of the District Court's decision indicates no such abuse.

To compel discovery of materials requested in connection with his selective prosecution claim, Hintzman first must establish a prima facie case. *See United States v. Catlett,* 584 F.2d at 865–66. For this purpose, Hintzman again relies on the finding in *Coleman* that FmHA field officers exercise "untrammeled discretion" in deciding which cases to refer for criminal prosecution. 580 F.Supp. at 209 n. 54. As we discussed above, this finding is not sufficient to establish a prima facie case of selective prosecution, and it does not support a compelled discovery order.

As to Hintzman's discovery motion in connection with his claim that the grand jury was misled, we agree with the District Court that he failed to demonstrate the "particularized need" required for disclosure of grand jury materials. *See Thomas v. United States,* 597 F.2d 656, 657 (8th Cir.1979). The District Court noted that the government had agreed to provide Hintzman access to all the information and evidence it intended to use at trial. The court also observed that the government had provided Hintzman with a list of witnesses and access to statements made by individuals who did not testify before the grand jury. We find no abuse of discretion in the District Court's denial of this discovery motion.

Hintzman's conviction is affirmed.