STATE of South Dakota, Plaintiff and Appellee,

v.

Kenneth MUETZE, Defendant and Appellant.

No. 18829.

Supreme Court of South Dakota.

Considered on Briefs April 27, 1995.

Decided June 28, 1995.

Mark Barnett, Atty. Gen., John M. Strohman, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Sidney B. Strange, Strange, Farrell, Johnson & Casey, Sioux Falls, for defendant and appellant.

PER CURIAM.

Kenneth Muetze was convicted of possession of a weapon by an inmate (SDCL 24-2-14(3)) and aggravated riot (SDCL 22-10-5). He was sentenced to concurrent fifteen year terms which were to be served consecutive to the life sentence he was currently serving. On the day the judgment of conviction was filed, the trial court also entered an order denying Muetze's motion to dismiss the indictment due to alleged discriminatory or selective prosecution. Muetze appeals. We affirm.

## FACTS

May 5 was the first day in 1993 that inmates at the South Dakota Penitentiary were permitted to move outside into the yard for recreation. The date for outside recreation had been moved up by a week due to beautiful weather. The inmates had no advance notice that there would be outside recreation on May 5. Of the four hundred inmates eligible for outside recreation, ap-

proximately two hundred elected to participate.

During the recreation period, officers were alerted that inmate Rodney Horned Eagle was possibly drinking "hootch." Officers followed Horned Eagle to his cell and locked him in. Inmates Iron Moccasin and Deserly swore at the officers, told them to release Horned Eagle, and began pushing the officers around.

Iron Moccasin and Deserly left the cell tiers and proceeded to the west yard rec shack where inmates began to congregate. When the inmates began grabbing baseball bats and golf clubs, the East Hall gate was closed in order to keep the inmates outdoors. A riot ensued and two guards were injured.

During the course of the riot, inmates broke into the Prison Industries Building where, in addition to "huffing material" (any kind of material with fumes), they obtained hammers, wrenches, and other tools.

Muetze was observed with an orange chain saw walking around the yard near the West Hall gate. The chain saw was running and Muetze would "rev" the saw and raise it in the air. Muetze stepped around the gate so he could not be viewed by officers who were inside. Correctional officers and police were planning to open the West Hall gate and enter the yard. Therefore, two warning shots were fired to get Muetze and other inmates to back away from the gate. Muetze did back away with chain saw in hand. Later in the evening Muetze was observed helping another man chain shut the West Hall entrance to the West Hall gate. The chain saw was at his side. Videotapes of Muetze with the chain saw, Muetze chaining the West Hall entrance, and Muetze throwing state property into a bonfire were shown to the jury. Photographs were shown of property cut up by a chain saw.

Of the two hundred inmates in the yard on the night of the riot, Muetze, a Caucasian, and Deserly and Iron Moccasin, Native Americans, were charged with felonies. Deserly and Iron Moccasin pled guilty prior to Muetze's trial. Thirty-two other inmates were subject to internal penitentiary disciplinary actions.

Following the guilty verdict, Muetze renewed his motion to dismiss due to discriminatory and selective prosecution as he claimed that charges were filed against him to lend a balance to the charges filed against Native Americans. In his motion, Muetze admitted that he did "secure a tool" but claimed that one hundred other inmates also did so, but were not criminally charged. He contended:

4. There is simply no rational reason why Kenneth Muetze was charged with criminal violations and others who acted similarly were not charged. Defendant can merely conclude that he was charged for discriminatory reasons that have no rational relationship to the administration of justice. Accordingly, Defendant is clearly the victim of selective prosecution which is prohibited by the South Dakota Constitution and the United States Constitution.

The trial court held a hearing, reviewed voluminous exhibits and the videotape, and filed an extensive memorandum opinion which was incorporated into the findings of fact and conclusions of law. The trial court concluded, in part:

2. Other than the inmates who were charged criminally, there was no evidence or proof that other inmates engaged in major criminal activity and thus, Muetze is not "similarly situated" with the uncharged inmates who were out on the yard the night of the riot.

3. Disproportionate impact by race, though relevant, is not sufficient to prove an invidious racial discrimination. Defendant Muetze's evidence that he alone is White and that the two others charged with felonies are American Indians is not an adequate showing on its own to make a prima facie case that he was selected by the State upon an invidious or arbitrary classification for prosecution.

4. Prosecuting authorities are afforded broad discretion and this discretion allows the State to choose to prosecute those whose violations appear to be most flagrant.

5. The evidence presented for dismissal of the indictment due to unlawful selective or discriminatory prosecution was insufficient.

## ISSUE

## DID THE STATE ENGAGE IN THE SELECTIVE AND DISCRIMINATORY PROSECUTION OF MUETZE?

The nature of the basis for the charge of selective prosecution is that:

The Fourteenth Amendment Equal Protection clause prohibits selective enforcement "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." To avoid prosecution for a criminal offense upon equal protection grounds, a defendant must show that the government exercised selective enforcement of the law upon an invidious discriminatory basis. . . .

To demonstrate a violation of the Equal Protection Clause, a defendant must provide selective enforcement based upon an arbitrary classification such as race, sex or religion. (citations omitted).

*State v. Secrest,* 331 N.W.2d 580, 583 (S.D. 1983).

In *People in Interest of W.Y.B.,* 515 N.W.2d 453, 454–455 (S.D.1994), this Court enunciated the elements required to establish a prima facie case of selective prosecution:

The Eighth Circuit has clearly set forth the two elements required to establish a prima facie case of selective prosecution. *See United States v. Matter,* 818 F.2d 653, 654–55 (8th Cir.19987); *United States v. Hintzman,* 806 F.2d 840, 842 (8th Cir. 1986); *United States v. Holmes,* 794 F.2d 345, 347–48 (8th Cir.1986). These elements are (1) that the defendant has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct; and (2) that the government's action in singling out the defendant was based on an impermissible motive such as race, religion, or the exercise by the defendant of constitutional rights. *Matter,* 818 F.2d at 654–55; *Hintzman,* 806 F.2d at 842; *Holmes,* 794 F.2d at 347–48. "The defendant's burden

is a heavy one, and because we afford broad discretion to prosecuting authorities, we require 'a showing of intentional and purposeful discrimination.' Absent this prima facie showing, the prosecution will be presumed to have been undertaken in good faith." *Hintzman,* 806 F.2d at 842 (citing *United States v. Eklund,* 733 F.2d 1287, 1290 (8th Cir.1984) (quoting *United States v. Catlett,* 584 F.2d 864, 866 (8th Cir.1978), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985))); *United States v. Ojala,* 544 F.2d 940, 943 (8th Cir.1976).

According to Muetze, the first prong of selective prosecution (that defendant was singled out while others similarly situated were not) has been met since only three of the two hundred inmates locked in the yard were criminally prosecuted and other inmates were seen with objects that could be used as weapons. The second prong (invidious discrimination) is met, Muetze claims, since he was the only Caucasian charged with a felony as a result of the riot.

Muetze has failed to meet the heavy burden of a prima facie showing of intentional and purposeful discrimination. Two hundred inmates were locked in the penitentiary yard the night of the riot. There was no evidence that all two hundred rioted. Thirty-two inmates were subject to internal disciplinary actions as a result of their actions during the riot. These actions included rock throwing, carrying a sledge hammer, spray painting, and being in unauthorized areas of the penitentiary. The trial court found, and the record supports:

V.

[Muetze] did not present evidence showing uncharged inmates carrying weapons for the purpose of engaging in assaultive conducts or to do major damage to property.

VI.

Muetze was a ring leader the night of the riot. He was seen on videotape carrying a chain saw and throwing State property in bond fire. There was also photo-

graphic evidence of property cut up by a chain saw.

## VII.

Inmates who served as ring leaders of the riot and committed serious crimes such as Eldred Iron Moccasin, Charles Deserly, and Kenneth Muetze were all charged with felonies. When the State did not have evidence to the magnitude of felony charges, prison disciplinary hearings were conducted. When the State had no evidence, the inmate was absolved.

While Muetze is Caucasian, the record clearly supports that he was criminally charged based upon his conduct, not his race. It is simply not improper for the State to choose to prosecute those whose violations appear to be more flagrant. *People in Interest of W.Y.B., supra.*

Affirmed.

MILLER, C.J., and SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., participating.